IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| DAVID CHARLES WALUKAS | § | |
| | § | |
| vs. | § | CIVIL ACTION 6:16cv1113 |
| | § | |
| COMMISSIONER, SOCIAL | § | |
| SECURITY ADMINISTRATION | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

On August 19, 2016, Plaintiff initiated this lawsuit by filing a complaint seeking judicial review of the Commissioner's decision denying his application for Social Security benefits. The matter was transferred to the undersigned with the consent of the parties pursuant to 28 U.S.C. § 636. For the reasons below, the Commissioner's final decision is **AFFIRMED** and this social security action is **DISMISSED WITH PREJUDICE**.

## PROCEDURAL HISTORY

Plaintiff protectively filed an application for disability insurance benefits and an application for supplemental security income on September 6, 2012, alleging disability beginning on April 30, 2011. The applications were denied initially on January 22, 2013, and again upon reconsideration on April 26, 2013. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). The ALJ conducted a hearing and entered an unfavorable decision on February 27, 2015. Plaintiff sought review from the Appeals Council. On June 23, 2016, the Appeals Council denied the request for review. As a result, the ALJ's decision became that of the Commissioner. Plaintiff then filed this lawsuit on August 19, 2016, seeking judicial review of the Commissioner's decision.

1

**STANDARD**

Title II of the Act provides for federal disability insurance benefits. Title XVI of the Act provides for supplemental security income for the disabled. The relevant law and regulations governing the determination of disability under a claim for disability insurance benefits are identical to those governing the determination under a claim for supplemental security income. *See Davis v. Heckler*, 759 F.2d 432, 435 n. 1 (5th Cir. 1983); *Rivers v. Schweiker*, 684 F.2d 1144, 1146, n. 2 (5th Cir. 1982); *Strickland v. Harris*, 615 F.2d 1103, 1105 (5th Cir. 1980).

Judicial review of the denial of disability benefits under section 205(g) of the Act, 42 U.S.C. § 405(g), is limited to "determining whether the decision is supported by substantial evidence in the record and whether the proper legal standards were used in evaluating the evidence." *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (quoting *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990)); *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991) (*per curiam*). A finding of no substantial evidence is appropriate only where there is a conspicuous absence of credible choices or no contrary medical evidence. *Johnson v. Bowen*, 864 F.2d 340, 343–44 (5th Cir. 1988) (citing *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). Accordingly, the Court "may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision." *Bowling*, 36 F.3d at 435 (quoting *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988)); *see Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993); *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992); *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985). Rather, conflicts in the evidence are for the Commissioner to decide. *Spellman*, 1 F.3d at 360 (citing *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)); *Anthony*, 954 F.2d at 295 (citing *Patton v.*

*Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983)). A decision on the ultimate issue of whether a claimant is disabled, as defined in the Act, rests with the Commissioner. *Newton v. Apfel*, 209 F.3d 448, 455–56 (5th Cir. 2000); Social Security Ruling ("SSR") 96-5p.

"Substantial evidence is more than a scintilla but less than a preponderance—that is, enough that a reasonable mind would judge it sufficient to support the decision." *Pena v. Astrue*, 271 Fed. Appx. 382, 383 (5th Cir. 2003) (citing *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994)). Substantial evidence includes four factors: (1) objective medical facts or clinical findings; (2) diagnoses of examining physicians; (3) subjective evidence of pain and disability; and (4) the plaintiff's age, education, and work history. *Fraga v. Bowen*, 810 F.2d 1296, 1302 n. 4 (5th Cir. 1987). If supported by substantial evidence, the decision of the Commissioner is conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). However, the Court must do more than "rubber stamp" the Administrative Law Judge's decision; the Court must "scrutinize the record and take into account whatever fairly detracts from the substantiality of evidence supporting the [Commissioner's] findings." *Cook*, 750 F.2d at 393 (5th Cir. 1985). The Court may remand for additional evidence if substantial evidence is lacking or "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); *Latham v. Shalala*, 36 F.3d 482, 483 (5th Cir. 1994).

A claimant for disability has the burden of proving a disability. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991). The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1)(A) and 423(d)(1)(A). A "physical or mental impairment"

is an anatomical, physiological, or psychological abnormality which is demonstrable by acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

In order to determine whether a claimant is disabled, the Commissioner must utilize a five–step sequential process. *Villa*, 895 F.2d 1022. A finding of "disabled" or "not disabled" at any step of the sequential process ends the inquiry. *Id.*; see *Bowling*, 36 F.3d at 435 (citing *Harrell*, 862 F.2d at 475). Under the five–step sequential analysis, the Commissioner must determine at Step One whether the claimant is currently engaged in substantial gainful activity. At Step Two, the Commissioner must determine whether one or more of the claimant's impairments are severe. At Step Three, the commissioner must determine whether the claimant has an impairment or combination of impairments that meet or equal one of the listings in Appendix I. Prior to moving to Step Four, the Commissioner must determine the claimant's Residual Functional Capacity ("RFC"), or the most that the claimant can do given his impairments, both severe and non–severe. Then, at Step Four, the Commissioner must determine whether the claimant is capable of performing his past relevant work. Finally, at Step Five, the Commissioner must determine whether the claimant can perform other work available in the local or national economy. 20 C.F.R. §§ 404.1520(b)–(f). An affirmative answer at Step One or a negative answer at Steps Two, Four, or Five results in a finding of "not disabled." *See Villa*, 895 F.2d at 1022. An affirmative answer at Step Three, or an affirmative answer at Steps Four and Five, creates a presumption of disability. *Id*. To obtain Title II disability benefits, a plaintiff must show that he was disabled on or before the last day of his insured status. *Ware v. Schweiker*, 651 F.2d 408, 411 (5th Cir. 1981), *cert denied*, 455 U.S. 912, 102 S.Ct. 1263, 71 L.Ed.2d 452 (1982). The burden of proof is on the claimant for the first four steps, but shifts to the Commissioner at Step Five if the claimant shows that he cannot

perform his past relevant work. *Anderson v. Sullivan*, 887 F.2d 630, 632–33 (5th Cir. 1989) (*per curiam*).

The procedure for evaluating a mental impairment is set forth in 20 CFR §§ 404.1520a and 416.920a (the "special technique" for assessing mental impairments, supplementing the five-step sequential analysis). First, the ALJ must determine the presence or absence of certain medical findings relevant to the ability to work. 20 CFR §§ 404.1520a(b)(1), 416.920a(b)(1). Second, when the claimant establishes these medical findings, the ALJ must rate the degree of functional loss resulting from the impairment by considering four areas of function: (a) activities of daily living; (b) social functioning; (c) concentration, persistence, or pace; and (d) episodes of decompensation. 20 CFR §§ 404.1520a(c)(2–4), 416.920a(c)(2–4). Third, after rating the degree of loss, the ALJ must determine whether the claimant has a severe mental impairment. 20 CFR §§ 404.1520a(d), 416.920a(d). If the ALJ's assessment is "none" or "mild" in the first three areas of function, and is "none" in the fourth area of function, the claimant's mental impairment is "not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities." 20 CFR §§ 404.1520a(d)(1), 416.920a(d)(1). Fourth, when a mental impairment is found to be severe, the ALJ must determine if it meets or equals a Listing. 20 CFR §§ 404.1520a(d)(2), 416.920a(d)(2). Finally, if a Listing is not met, the ALJ must then perform a residual functional capacity assessment, and the ALJ's decision "must incorporate the pertinent findings and conclusions" regarding the claimant's mental impairment, including "a specific finding as to the degree of limitation in each of the functional areas described in [§§ 404.1520a(c)(3), 416.920a(c)(3)]." 20 CFR §§ 404.1520a(d)(3) and (e)(2), 416.920a(d)(3) and (e)(2).

# ALJ'S FINDINGS

The ALJ made the following findings in his February 27, 2015 decision:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2014.

2. The claimant has not engaged in substantial gainful activity since April 30, 2011, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

3. The claimant has the following severe impairments: osteoarthritis of the lumbar spine, left shoulder, left knee, left foot and ankle, and dysthymic disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently, stand and walk for two to four hours in an eight hour workday and for 45 minutes continuously, and sit for six hours in an eight hour workday and for one to one and one-half hours continuously. He is limited to only frequently pushing and pulling with the left upper extremity and left lower extremity. This claimant is limited to no climbing ladders, ropes or scaffolds, and only occasional climbing ramps and stairs, balancing, stooping, kneeling, crouching and crawling. He is limited to only occasional overhead reaching with the left upper extremity. The claimant is further limited to no more than frequent exposure to extreme cold. He maintains the ability to understand, remember and carry out only simple instructions, limited to no more than occasional interaction with the public. Within these limitations, he can maintain attention, concentration, persistence and pace, and withstand work stress for extended periods of time.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965.

7. The claimant was born on August 21, 1966 and was 44 years old, which is defined as a younger individual age 18–49, on the alleged disability onset date. The claimant subsequently changed age category to a younger individual age 45–49 (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969 and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from April 30, 2011, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

## ADMINISTRATIVE RECORD

The medical record includes a small number of records prior to the applicable time period. In 1992, lumbar spine X-Rays showed a bilateral pars interarticularis defect at L5, described as suggesting a fracture, and mild scoliosis of the thoracolumbar spine convex to the right. Plaintiff sought workers' compensation in 2002 for a left knee injury. Dr. McHenry found maximum medical improvement as of November 10, 2006. He assessed a 10% upper extremity impairment secondary to range of motion and specific diagnosis criteria and a 10% impairment for a distal clavicle arthroplasty, for a total combined upper extremity impairment of 19%, converted to an 11% whole person impairment. The only other records in the medical record are two consultative examinations—a physical consultative examination by Dr. Frank D. Setzler, Jr., on October 30, 2012 and a consultative psychological evaluation by Dr. J. Lawrence Muirhead on January 4, 2013.

At his examination on October 30, 2012, Plaintiff reported left foot pain radiating from his left ankle to the ball of his left foot, left knee pain, lower back pain, left arm pain radiating from his left elbow to the left shoulder and left shoulder pain. Plaintiff explained that he injured his left foot, left knee and left arm and shoulder in a work accident. Plaintiff rated all of his pain as a five out of ten.

Plaintiff reported that his foot pain varies between sharp and dull, radiates to his ankle and the ball of his foot, and is exacerbated by standing for long periods of time. It is relieved by laying down. Plaintiff's knee pain is always present, ranges from sharp to dull, is exacerbated by long periods of standing, sitting, riding in a car, bending and lifting. For relief, he stated that he takes acetaminophen or ibuprofen, takes a hot shower or uses a heating pad. He also uses a cane when walking. Plaintiff reported that his back pain started in 1992, and it is exacerbated by bending, lifting and sneezing and it is relieved by heat. Plaintiff stated that his left arm and shoulder pain is exacerbated by bending and lifting and is relieved by heat. His left shoulder pain varies between sharp, dull and stabbing pain and radiates to his spine. Plaintiff additionally told Dr. Setzler that he suffers from a learning disability with memory loss, bilateral hearing loss, blurred vision, headaches, anxiety, nervousness, and depression. Plaintiff's medical history included surgery on his left knee and left shoulder, rehabilitation therapy and physical therapy. His medications included Tylenol and an over-the-counter antacid.

On examination, Plaintiff had a moderate gait disturbance and used a cane when walking. He exhibited moderate to severe pain and difficulty getting into and out of a chair and getting on and off of the examination table. Plaintiff performed heel and toe tandem walking without difficulty, but he was unable to squat or hop due to pain. Plaintiff could hear normal voice tones when facing the speaker. He had moderate tenderness of the paraspinal muscles on palpation with minimal reduction in all planes, but his neck posture was good and erect. Plaintiff's left shoulder had tenderness and pain at the shoulder girdle on palpation. His range of motion in the right shoulder was normal and his range of motion in the left shoulder included abduction to 90 degrees and extension to 30 degrees. Plaintiff had strong and equal hand grasp, bilaterally, and radial pulses were 2+ bilaterally. Plaintiff reported tenderness and pain in the left elbow and upper arm

on palpation, but he had a nearly full range of motion. Examination of the chest and abdomen were unremarkable. Plaintiff reported pain in the lumbosacral area when bending over to touch his toes, but he did not exhibit thoracic kyphosis, lumbar lordosis, scoliosis or atrophy. Plaintiff's range of motion was limited to 40/60 forward flexion, 20/25 right lateral bending, 10/25 left lateral bending and 10/25 extension. Plaintiff's left hip motion was moderately limited due to pain in the lower back and knee. Dr. Setzler noted that Plaintiff's legs are slightly bow-legged but there were no signs of edema, clubbing of the toes, atrophy or discoloration. Plaintiff had full range of motion in his right knee and ankle and limited range of motion in his left knee and ankle with pain on palpation. Straight leg testing was negative. Motor testing was normal.

Dr. Setzler ordered X-Rays of the left knee, lumbar spine, and left shoulder. Plaintiff's knee X-Ray showed mild medial compartmental narrowing consistent with mild osteoarthritis. The shoulder imaging showed advanced arthritic change in the left shoulder, joint space narrowing, subarticular cystic change in the glenoid and spurring in the glenohumeral joint with possible ossified loose body in the joint. Plaintiff's lumbar X-Rays showed mild degenerative changes with mild spurring of the superior endplate of L5. Dr. Setzler diagnosed left foot and ankle osteoarthritis, left knee osteoarthritis, lumbar degenerative disc disease with mild spurring of L5, left arm pain possibly related to cervical disc degeneration and radiculopathy, left shoulder advanced osteoarthritis with joint space narrowing and subarticular cystic change in the glenoid and spurring in the left glenohumeral joint, memory impairment, learning disability, and depression. With regard to Plaintiff's ability to perform work activities, Dr. Setzler gave the following opinion:

> In response to the questions that have been asked and based on the current evidence obtained during the exam, the patient's ability to do work activities such as stand or move about for long periods of time, squat, lift and carry objects is severely limited by his left shoulder and left arm pain, lumbar pain and left knee pain. He

> has moderate gait disturbance secondary to the left knee pain and might use a cane to help walk. He was able to perform heel to toe walking but unable to squat or hop due to his left knee pain. He also is mildly bow-legged. Although his hand grip strength was normal bilaterally, he is unable to reach with his left arm due to left arm and shoulder pain. He reported a pain level of 5/10 in his left arm, left shoulder, left knee, and lower back at all times. The findings on this exam are consistent with these levels of pain.
>
> He has difficulty hearing voices unless one speaks directly in front of him and speaks slowly and clearly. I believe he would benefit from the use of bilateral hearing aids. It was obvious during the exam that he is distressed about his memory problems and learning disability. He needs a thorough mental and psychiatric evaluation and I believe he would benefit from therapy for his learning and memory disabilities as well as psychiatric therapy for depression.

*See* Administrative Record, ECF 11-7, at *6.

Dr. Muirhead conducted Plaintiff's consultative psychological evaluation on January 4, 2013. Dr. Muirhead noted that Plaintiff reported bilateral hearing loss and frequently asked him to repeat questions during the evaluation, but Plaintiff reported that he had not had his hearing evaluated for ten years and he has never used hearing aids. Plaintiff additionally reported having a memory impairment since childhood and dropping out of school. He stated that he completed his GED at age nineteen and obtained a commercial driving license. Plaintiff reported difficulty with erratic sleep, low energy level, impaired concentration and loss of interest. His stressors included unemployment, financial difficulty, and family conflict. Dr. Muirhead opined that Plaintiff exhibited a dysphoric mood and restriction in range of affect.

Dr. Muirhead noted that Plaintiff has a driver's license, independently dresses himself, takes care of his own personal hygiene and performs routine household chores. He is competent to manage his finances and he has literacy skills sufficient for utilizing the postal service and telephone directories. Plaintiff reported that is he increasingly socially isolated, but he does speak to friends on the telephone and occasionally attends church services.

With regard to Plaintiff's mental status, Dr. Muirhead stated that Plaintiff exhibited a frank and cooperative attitude and he was readily responsive to inquiry. Plaintiff's mood was depressive and his affect was restricted in range. Plaintiff's had relevant and goal-directed thought processes and was able to remain on topic. Plaintiff exhibited an average ability to sustain concentration and variable short-term memory function. His thought processes were mildly impoverished in content. Dr. Muirhead opined that Plaintiff functioned intellectually in the low average range. His judgment appeared to be significantly compromised by both depressive affect and hearing impairment, but his sensorium was clear and there was no evidence of an impairment of reality testing. Plaintiff possessed an adequate understanding of the purpose of the evaluation. Dr. Muirhead opined that Plaintiff has a Communication Disorder with Hearing Impairment and Dysthymic Disorder. He assessed a GAF score of 58.

Plaintiff testified at his hearing before the ALJ on January 6, 2015. Plaintiff testified that he was born on August 21, 1966 and he has a GED. He stated that he is able to read and write. Plaintiff testified that he was hired for a light duty job in 2012 at R&R Millwork, but he discovered on the first day that they wanted him to lift cabinets. He could not do the work and they told him they did not have anything else for him to do. He explained that he expected to not have to lift more than fifteen to twenty pounds.

Plaintiff testified that he can probably walk about a quarter mile or a little bit more depending on how he is feeling that day. He estimated that he can for walk for approximately twenty minutes. Plaintiff stated that his knee swells due to fluid in his knee. He opined that he could be on his feet for a total of three to four hours in an eight-hour workday and he can sit for approximately forty-five minutes before his knee causes severe pain and he needs to stand or walk.

Plaintiff appeared at the hearing with a cane. He testified that he bought it at a yard sale and he uses it almost every day. Plaintiff estimated that he could lift something that is thirty to forty pounds to place it onto a table. Plaintiff stated that, in addition to his knee, he has pain in his left foot, left ankle, lower back, left shoulder and left arm. He has not taken any prescription pain medication since he had surgery on his knee and shoulder in 2005 or 2006. He takes over-the-counter medications on ten to fifteen days per month.

Plaintiff stated that he worked as an overhead crane operator until he injured his shoulder in 2005 and received workers' compensation. He lives alone in a mobile home. Plaintiff testified that he cares for himself, dresses himself and performs activities such as combing his hair, bathing, brushing his teeth and shaving. He prepares his own food, buys groceries and cleans his own home. Plaintiff stated that he earns small amounts of money performing occasional menial tasks for friends. He explained that he spends his days talking to friends, performing daily chores, watching television, going to the store, performing personal hygiene, and washing clothes. Plaintiff stated that he has difficulty with tasks that require him to bend down or reach above his waist.

Plaintiff testified that he has not been treated by a psychologist or psychiatrist since April of 2011, he has not taken any medication for a mental condition during that time period and he has never been hospitalized for a mental condition. Plaintiff stated, however, that he has a mental impairment because he has difficulty with his short-term memory.

A medical expert, Dr. Wayne Bentham, testified at Plaintiff's hearing. Dr. Bentham identified the mental impairment of Dysthymic Disorder in Plaintiff's records. He opined that Plaintiff has mild limitations in functioning, moderate social limitations, and moderate limitations in concentration, persistence and pace. Plaintiff has not had any episodes of decompensation. Dr.

Bentham determined that Plaintiff can understand, remember and carry out simple instructions, which incorporates Plaintiff's moderate limitation in concentration. He also stated that Plaintiff's moderate social limitation would limit him to occasional public contact and that Plaintiff's GAF score of 58 is not severe. Counsel for Plaintiff asked Dr. Bentham to identify the best test for determining whether an individual has an organic mental disorder and he stated that the most accepted and credible exam for a neuropsychological exam is the right hand neuropsychological test.

Another medical expert, Dr. Kweli Amusa, testified at the hearing. Dr. Amusa identified Plaintiff's medically determinable physical impairments to include osteoarthritis in the left shoulder, left knee, left foot and left ankle and arthritis in the lumbar spine. She noted that the record shows mildly decreased range of motion in the lumbar spine and does not show any neurological deficits. With regard to any bone defects showing on X-Rays, Dr. Amusa testified that their significance would be determined by a physical examination. She opined that Plaintiff's impairments, viewed individually or in combination, do not meet or medically equal a listed impairment. Specifically, Dr. Amusa testified that the record does not show the involvement of both upper extremities as required by 1.02, significant difficulty in ambulation as required by 1.04 or neurological deficits.

Dr. Amusa opined that the record supports a finding that Plaintiff can lift and carry 20 pounds occasionally and 10 pounds frequently, stand and walk for forty-five minutes, for a total of two to four hours in an eight-hour day, and sit for one-and-a-half hours for a total of six hours in an eight-hour day. Dr. Amusa clarified that Plaintiff would simply need the opportunity to reposition himself for a few minutes after sitting for an hour-and-a-half. She stated that Plaintiff would be limited to frequent push and pull on the left lower extremity and no climbing ladders,

ropes or scaffolds. All other postural limitations would be limited to occasional. Dr. Amusa also testified that Plaintiff can occasionally reach overhead with the left upper extremity. She stated that these conclusions are consistent with Dr. Setzler's determination that Plaintiff's ability to stand or move about for long periods of time, squat, and lift and carry objects is severely limited by his left shoulder and left arm pain, lumbar pain and left knee pain. She also testified that the limitation to standing and walking for two to four hours takes into consideration Plaintiff's use of a cane when his knee is bothering him. Dr. Amusa stated that she did not see anything in the record to show that Plaintiff has medically determinable impairments that would result in him missing work more than one day per month.

A vocational expert, Dr. Beasley, also testified at Plaintiff's hearing. Dr. Beasley testified that Plaintiff's work as an overhead crane operator is classified as DOT 921.663-010, light, SVP 5. The ALJ presented Dr. Beasley with a hypothetical for an individual who can occasionally lift 20 pounds, frequently lift 10 pounds, stand and walk for a range of 2 to 4 hours in an 8-hour period, 45 minutes continuously, and sit for 6 out of 8 hours, 1-1/2 hours continuously, with push/pull limited to frequent for the upper and lower extremities, no climbing ladders, ropes or scaffolds, all postural limitations reduced to occasional, overhead reaching on the left reduced to occasional, no more than frequent exposure to extreme heat or cold, with the ability to understand, remember and carry out only simple instructions with no more than occasional interaction with the public. Dr. Beasley testified that the individual in the hypothetical cannot perform Plaintiff's past work as an overhead crane operator.

Dr. Beasley also opined that the unskilled sedentary job base would be eroded by about 25% due to the individual's inability to work with the public more than occasionally. She stated that the unskilled sedentary job base provides approximately 58,475 jobs in Texas and 748,766

jobs in the national economy and those numbers would be reduced by 25%. Dr. Beasley then identified the following jobs that are consistent with the hypothetical: (1) lampshade assembler, DOT 739.684-094, sedentary, SVP 2, with 4,344 jobs in Texas and 55,155 jobs in the national economy; (2) electronics dial marker, DOT 729.684-018, sedentary, SVP 2, with 3,647 jobs in Texas and 35,117 jobs in the national economy; and (3) paperweight tester, DOT 539.485-010, sedentary, SVP 2, with 4,376 jobs in Texas and 58,721 jobs in the national economy. Dr. Beasley testified that each of these unskilled jobs can be performed by an individual of Plaintiff's age, education and work experience, with no transferable skills, with the combined mental and physical limitations outlined by the medical expert witnesses. She also stated that the need to stand or reposition after sitting for an hour-and-a-half would be consistent with these jobs. The electronic dial marker job is an assembly line type of job but the jobs of lampshade assembler and paperweight tester are not.

Dr. Beasley opined that the need to be off task for two minutes every hour-and-a-half would not affect an individual's ability to perform these jobs. If the individual was off task for ten minutes at a time, however, he would be precluded from competitive employment. Similarly, only one absence per month with a doctor's note or other excuse would be permissible and he would not be able to maintain unskilled employment if he misses work two or three days per month.

## DISCUSSION AND ANALYSIS

In his brief, Plaintiff identifies three issues for review: (1) whether Plaintiff established by objective medical evidence a mental or physical disability in accordance with the Listing of Impairments, Appendix 1, Subpart P, of Regulations No. 4; (2) whether the ALJ properly considered his pain; and (3) whether Dr. Bentham could not form an opinion because he testified that the necessary tests for a mental impairment listing analysis were not available. Plaintiff

asserts that the medical reports support a finding of disability. He further argues that the ALJ did not consider his subjective testimony of pain. Finally, Plaintiff submits that the ALJ did not fully develop the record by failing to obtain a Nebraska or Halstead organic test.

In his written decision, the ALJ concluded that Plaintiff has not engaged in substantial gainful activity since his alleged onset date of April 30, 2011 and he identified the following severe impairments: osteoarthritis of the lumbar spine, left shoulder, left knee, left foot and ankle, and dysthymic disorder. Plaintiff's brief does not challenge these findings.

The ALJ then determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listed impairment. The ALJ assigned great weight to Dr. Amusa's opinion that Plaintiff does not have an impairment meeting listing 1.02 or 1.04.[1] In her testimony, Dr. Amusa explained that Plaintiff does not meet either of these listings because the record does not show the involvement of both upper extremities as required by 1.02 and does not show the significant difficulty in ambulation and neurological deficits required by 1.04. Plaintiff's brief asserts a conclusory allegation that the medical evidence supports a finding of disability, but he does not identify any medical evidence that contradicts Dr. Amusa's opinion or that shows that he meets either listing.

The ALJ similarly determined that Plaintiff does not meet the requirements for a 12.04 impairment, which includes depressive, bipolar and related disorders.[2] The Listing requires a claimant to satisfy what is referred to as the "paragraph B" criteria, meaning he must show at least two of the following: (1) a marked restriction of activities of daily living, (2) marked difficulties

---

[1] The Listing for 1.02 refers to major dysfunction of a joint and 1.04 refers to disorders of the spine. 20 C.F.R. Part 404, Subpart P, Appendix 1.

[2] 20 C.F.R. Part 404, Subpart P, Appendix 1. The paragraph B criteria have since been amended to require an extreme limitation of one, or marked limitation of two, of the following areas of mental functioning: (1) understand, remember or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself.

16

in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; and (4) repeated episodes of decompensation.[3] The ALJ concluded that Plaintiff has a mild restriction in activities of daily living, moderate difficulties in social functioning, moderate difficulties in concentration, persistence or pace, and no episodes of decompensation. Plaintiff's testimony at the hearing concerning his ability to care for himself on a regular basis, as well as Dr. Muirhead's evaluation, support the ALJ's conclusion that Plaintiff only has mild restrictions in activities of daily living. Plaintiff has not received treatment for any psychological or psychiatric conditions and there is no evidence in the record showing any episodes of decompensation. Dr. Muirhead, the only psychologist to examine Plaintiff, determined that Plaintiff exhibited an average ability to sustain concentration and he had variable short-term memory. Dr. Bentham's review of Dr. Muirhead's examination and findings led him to conclude that Plaintiff has mild limitations in functioning, moderate social limitations, and moderate limitations in concentration, persistence or pace. There are no records contradicting these findings and they are consistent with Plaintiff's own testimony concerning his abilities.

At Step Three, the burden remains on Plaintiff to show that he is disabled. *Anderson*, 887 F.2d at 632–33. Here, Plaintiff has not shown that the ALJ erred in finding that he does not have an impairment or combination of impairments that meets or medically equals a listed impairment. The ALJ's conclusion is supported by substantial evidence.

Next, Plaintiff asserts that the ALJ did not fully consider his subjective complaints of pain in his assessment of Plaintiff's residual functional capacity. In determining whether pain and other symptoms are disabling, the courts give deference to the Commissioner. *Hollis v. Bowen*, 837 F.2d 1378, 1384–85 (5th Cir. 1988). The Commissioner, as opposed to the Court, is the fact

---

[3] *Id*.

finder and the Commissioner may determine the credibility of witnesses and medical evidence. *Griego v. Sullivan*, 940 F.2d 942, 945 (5th Cir. 1991). It is within the ALJ's discretion to determine the disabling nature of a claimant's pain or other symptoms, and the ALJ's determination is entitled to considerable deference. *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001).

It is well settled that pain in and of itself may be disabling. *Cook v. Heckler*, 750 F.2d 391 (5th Cir. 1985). Not all pain, however, is disabling. *Carry v. Heckler*, 750 F.2d 479, 485 (5th Cir. 1985). To rise to the level of disabling, pain must be "constant, unremitting, and wholly unresponsive to therapeutic treatment." *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1991). The ALJ must consider subjective evidence of pain or other symptoms, but the subjective evidence must be corroborated by objective medical evidence and it is within the ALJ's discretion to determine the pain's disabling nature. *Wren v. Sullivan*, 925 F.2d 123, 128–29 (5th Cir. 1991); *Houston v. Sullivan*, 895 F.2d 1012, 1016 (5th Cir. 1989). A claimant's testimony of pain and limitations, standing alone, is insufficient to establish disability. *See* 42 U.S.C. § 432(d)(5)(A) ("An individual's statement as to pain or other symptoms shall not alone be conclusive of disability."). "At a minimum, objective medical evidence must demonstrate the existence of a condition that could reasonably be expected to produce the level of pain or other symptoms alleged." *Anthony v. Sullivan*, 954 F.2d 289, 296 (5th Cir. 1992) (citing *Owens v. Heckler*, 770 F.2d 1276, 1281 (5th Cir. 1985)).

In his RFC analysis, the ALJ summarized all of the medical evidence in the record, including Plaintiff's records from 1992 through 2006, Plaintiff's statements concerning his pain and limitations in his Function Report and hearing testimony, and the testimony of the expert witnesses. After considering all of the evidence, the ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause some of his alleged symptoms

but his statements concerning their intensity, persistence and limiting effects are not entirely credible. He noted that Plaintiff reported an ability to do yard work with a riding lawn mower, vacuum and sweep. He also drives into town a few times per week. The objective medical evidence shows arthritis and a limited range of motion in the affected joints, but there is no evidence of neurological deficits or strength deficits. Plaintiff occasionally takes over-the-counter pain relievers and does not take any prescription medication for pain. It is within the ALJ's discretion to determine the disabling nature of Plaintiff's pain and the subjective allegation of pain presented by Plaintiff here is not fully corroborated by objective medical evidence. *Wren*, 925 F.2d at 128–29.

Finally, Plaintiff submits that the ALJ did not fully develop the record because he did not order further psychological testing. The burden is on a claimant to establish a mental impairment. *Jones v. Bowen*, 829 F.2d 524, 526 (5th Cir. 1987). An ALJ has a duty to fully and fairly develop the facts relating to a claimant's application for disability benefits. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). Reversal for the ALJ's failure to adequately develop the record, however, is only required if the claimant shows prejudice. *Id.* Prejudice is established by showing that Plaintiff "could and would have adduced evidence that might have altered the result." *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984). If necessary for an ALJ to make the disability decision, he should order a consultative examination at government expense. *Pierre v. Sullivan*, 884 F.2d 799, 802 (5th Cir. 1989).

In this case, the ALJ concluded that a consultative psychological examination was necessary and Plaintiff was subsequently examined by Dr. Muirhead. Although Plaintiff faults the ALJ for not requesting a Nebraska or Halstead organic test, he does not explain what information these tests would provide. Plaintiff has not shown that results from these tests would have altered

the outcome of this case, as required to establish prejudice. As a result, Plaintiff has not shown a reversible error by the ALJ.

In this case, the ALJ applied the correct legal standards and the decision is supported by substantial evidence. The Commissioner's decision should be affirmed and the complaint should be dismissed. It is therefore

**ORDERED** that the Commissioner's final decision is **AFFIRMED** and this social security action is **DISMISSED WITH PREJUDICE**.

So ORDERED and SIGNED this 8th day of March, 2018.

_____
K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE